

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00191-CV

_____

ERICA QUINN, Appellant

V.

STATE FARM LLOYDS; STATE FARM LLOYDS, INC.; JIM GOLDSWORTHY; HAROLD D. BAKER AS TRUSTEE OF HAROLD D. AND MADONNA A. BAKER TRUST; RANDALL TODD BAKER AND SHELLY ZOYLA BAKER, CO-TRUSTEES AS TRUSTEE OF THE NEW COVENANT FAMILY REVOCABLE TRUST; RANDALL TODD BAKER; SHELLY ZOYLA BAKER; MICHAEL STEVEN WEY; RANDALL HOUSTON HARBERT; AND CHUCK PEDROSO, Appellees

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court No. CV19-00103

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

This appeal arises from a lawsuit concerning a February 2017 fire loss to Appellant Erica Quinn's residential property located in Lake Kiowa, Texas (the Property), and the insurance policy on the Property.

Quinn, acting pro se, originally filed suit in March 2019. Over the course of nearly three years, Quinn amended her petition four times, adding, removing, and re-adding defendants in the process. At the time of appeal, Quinn's "live" pleading was her "Third Amended Complaint"[1] in which she asserted claims against State Farm Lloyds and certain of its agents for violations of the Texas Deceptive Trade Practices Act (DTPA), common law and statutory fraud, breach of contract, and defamation. She also asserted claims against the prior Property owners based on their marketing of the Property and supposed "defective construction" of certain improvements.

Ultimately, the trial court entered take-nothing summary judgments or dismissal orders disposing of Quinn's claims against all of the defendants. Quinn appealed, arguing that the trial court erred by granting certain of the defendants' dispositive motions. We will affirm.

---

[1]Although Quinn incorrectly labeled her pleading a "complaint," we will refer to it herein as her petition. *See* Tex. R. Civ. P. 78; *see also Gentry v. Smith*, No. 05-18-01181-CV, 2019 WL 4033947, at *1 n.2 (Tex. App.—Dallas Aug. 27, 2019, pet. denied) (mem. op.).

## I. Background

As noted above, this case stems from Quinn's claim for insurance benefits in connection with a February 2017 fire at the Property. Believing that she was entitled to much more than the $700,000 in policy benefits that she had received to cover the fire damage, on March 1, 2019, Quinn sued her insurer State Farm Lloyds[2] and its agent Jim Goldsworthy. Quinn also sued the previous owners of the Property—the Harold D. & Madonna A. Baker Trust, New Covenant Family Revocable Trust, Shelly Z. Baker, and Randall T. Baker (collectively, the Baker Defendants)—claiming that their "defective installation" of an outdoor fireplace had caused the fire and that they had misrepresented the "quality, integrity[,] and warranty" of the Property.

Quinn's petition mistakenly named State Farm Lloyds's attorney-in-fact SFL Inc. as a defendant instead of State Farm Lloyds.[3] Because SFL Inc. is not an insurer and does not investigate or handle insurance claims and thus had no interest in

---

[2]As discussed in greater detail below, Quinn's original petition erroneously named State Farm Lloyds, Inc. (SFL Inc.) as a defendant instead of State Farm Lloyds.

[3]As the Fifth Circuit has explained, State Farm Lloyds and SFL Inc. "are distinct legal entities." *De Jongh v. State Farm Lloyds*, 555 F. App'x 435, 436 n.1 (5th Cir. 2014). State Farm Lloyds "sells insurance under a so-called 'Lloyd's plan,' which consists of a group of underwriters who combine to issue insurance through an attorney[-]in[-]fact"—SFL Inc. *See id.* (citing Tex. Ins. Code Ann. § 941.001). "'[T]he attorney[-]in[-]fact acts as an agent for the Lloyd's group,'" but it "does not bear risks and has no contractual relationship with the insured." *Id.* (quoting *Royal Ins. Co. of Am. v. Quinn–L Cap. Corp.*, 3 F.3d 877, 882 (5th Cir. 1993)).

Quinn's suit, it filed a verified denial pointing out the defect of parties and moved for summary judgment.

In July 2019, Quinn filed an amended petition and a response to SFL Inc.'s summary judgment motion. In her first amended petition, Quinn acknowledged that she had filed a "parallel action" in federal court "seeking relief under the Federal Racketeering Influenced Organizations Act [sic] for acts of organized crime committed by Parent and Sister company of Defendant Lloyds, and officers of Defendants' parent company State Farm Mutual Automobile Insurance Company."

Several weeks later, Quinn filed a "corrected" first amended petition removing SFL Inc. as a defendant and adding State Farm Lloyds in its place. She also filed an amended response to SFL Inc.'s summary judgment motion admitting that she had "erroneously" named SFL Inc. as a defendant. Because Quinn had voluntarily dismissed SFL Inc. from the suit, the hearing on its motion for summary judgment was canceled.

After dismissing SFL Inc.—the only defendant Quinn had served with process up to that point—Quinn did not attempt to serve State Farm Lloyds or any other defendant and did nothing to advance this case for nearly two years while she pursued her parallel action in federal court. Quinn's federal action was dismissed in November 2020 because Quinn and her co-plaintiff John S. Vanderbol III had failed—despite amending their complaint multiple times—to provide a short and plain statement of their claims as required by the Federal Rules of Civil Procedure.

4

*See generally Vanderbol v. State Farm Mut. Auto Ins. Co.*, No. 4:19-cv-119, 2020 WL 6866393 (E.D. Tex. Nov. 23, 2020), *aff'd*, No. 20-40875, 2021 WL 2577611 (5th Cir. Mar. 1, 2021).

In March 2021, shortly after the Fifth Circuit affirmed the dismissal of Quinn's parallel action, the trial court placed this case on its dismissal docket, meaning that unless Quinn took certain steps, her lawsuit would be dismissed for want of prosecution. To prevent dismissal of her lawsuit, Quinn filed a motion to retain the case on the court's docket.

On July 20, 2021, Quinn filed a second amended petition adding new defendants and removing others. Specifically, she added Charles Pedroso, Michael Steven Wey, and Randall Houston Harbert[4] and removed the Baker Defendants.[5]

On July 29, 2021, the trial court signed an order retaining the case on its docket but requiring Quinn to perfect service on all of the defendants named in her second amended petition on or before December 1, 2021. In response to the trial court's

---

[4]Quinn's second amended petition alleges, among other things, that Pedroso was "employed by Defendant Lloyds" and "engaged in deceptive trade practices" "as instructed by Defendant Lloyds"; that Wey "acted as the President of Defendant Lloyds during the entire time the Defendants engaged in the unlawful conduct"; and that Harbert "is the chief architect" of State Farm Lloyds's supposed scheme to defraud Quinn and "acted to cause Defendant Lloyds . . . to engage in deceptive trade practices."

[5]At the time that Quinn filed her second amended petition removing the Baker Defendants from the lawsuit, they had not been served with process.

directive, Quinn served three of the defendants: State Farm Lloyds, Goldsworthy, and Pedroso.

State Farm Lloyds, Goldsworthy, and Pedroso each answered the suit and filed dispositive motions. Among other things, they asserted that the trial court should dismiss Quinn's causes of action against them or, alternatively, grant them summary judgment because Quinn's claims were barred by limitations.

Shortly before the hearing on State Farm Lloyds's, Goldsworthy's, and Pedroso's dispositive motions, Quinn filed a response to the motions and amended her petition again. This time, Quinn re-added SFL Inc. and the Baker Defendants as defendants even though she had voluntarily dismissed them in her prior pleadings.

On November 12, 2021, the trial court heard State Farm Lloyds's, Goldsworthy's, and Pedroso's dispositive motions. Following the hearing, the trial court signed an order granting State Farm Lloyds's, Goldsworthy's, and Pedroso's summary judgment motions and dismissing Quinn's claims against them with prejudice.

At that point in time, Quinn still had not served any of the other defendants and, in fact, had not even paid for citations to be issued to SFL Inc. or the Baker Defendants. But after Quinn's claims against State Farm Lloyds, Goldsworthy, and Pedroso were dismissed, she began to make efforts to serve the other defendants.

On November 12, 2021—the date of the summary judgment hearing—Quinn filed a motion requesting authorization to serve Wey by alternative means. The trial court granted this motion, and Quinn later perfected service on Wey.

Shortly thereafter, Quinn filed a similar motion to serve Harbert by alternative means, but the trial court denied it. As a result, Quinn never served Harbert.

On November 23, 2021, citations and returns of service for Randall T. Baker, Shelly Z. Baker, and New Covenant Family Revocable Trust were filed.

In December 2021, SFL Inc., Wey, the Bakers, and New Covenant timely filed answers to Quinn's third amended petition. In their answers, each defendant raised the defense of limitations and requested dismissal of Quinn's claims under Rule 91a or, in the alternative, the entry of a take-nothing summary judgment.

Following a February 1, 2022 hearing on SFL Inc.'s, Wey's, the Bakers', and New Covenant's dispositive motions, the trial court signed take-nothing summary judgments dismissing Quinn's claims against SFL Inc. and Wey with prejudice and dismissed with prejudice Quinn's claims against Harbert for want of prosecution. At the conclusion of the hearing, the trial court also indicated that Quinn's claims against the Harold D. and Madonna A. Baker Trust and New Covenant would be dismissed but took the Bakers' individual dispositive motions under advisement and requested additional briefing on those motions.

In April 2022, the trial court signed orders dismissing Quinn's claims against New Covenant and the Harold D. and Madonna A. Baker Trust. In addition, the trial

court signed orders granting the Bakers both take-nothing summary judgments and Rule 91a dismissals.

This appeal followed.

## II. Discussion

In five issues, Quinn argues that the trial court erred by (1) granting summary judgments to State Farm Lloyds, SFL Inc., Goldsworthy, Wey, and Pedroso (collectively, the SF Appellees); (2) granting both summary judgments and Rule 91a dismissals to the Bakers (as opposed to granting one form of relief or the other); (3) dismissing Quinn's claims against New Covenant; (4) granting summary judgments to the Bakers; and (5) dismissing Quinn's claims against Harbert with prejudice. We will address each of these issues below.

## A. The Trial Court Did Not Err by Granting Summary Judgments to the SF Appellees

In her first issue, Quinn asserts that the trial court erred by granting the SF Appellees summary judgments on limitations grounds. We disagree.

### 1. Standard of Review

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848

8

(Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all elements of that defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant must present summary judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

### 2. Applicable Law Regarding Statutes of Limitations

A statute of limitations establishes a time limit for suing in a civil case. *Goetsch v. Rolls*, No. 02-20-00263-CV, 2021 WL 733090, at *4 (Tex. App.—Fort Worth Feb. 25, 2021, pet. denied) (mem. op.) (citing *Statute of Limitations*, Black's Law Dictionary (11th ed. 2019)). A statute of limitations operates as an affirmative defense to a cause of action. *Dunmore v. Chi. Title Ins. Co.*, 400 S.W.3d 635, 640 (Tex. App.—Dallas 2013, no pet.).

A statute of limitations begins to run on the accrual date, which is the date that the cause of action accrues. *See JPMorgan Chase Bank, N.A. v. Pro. Pharmacy II*, 508 S.W.3d 391, 414 (Tex. App.—Fort Worth 2014, no pet.). Generally, a cause of action accrues when facts giving rise to the cause of action come into existence, even if those facts are not discovered, or the resulting injuries do not occur, until later. *See Exxon*

*Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011) (op. on reh'g); *Dunmore*, 400 S.W.3d at 640.

The discovery rule is a narrow exception to the general rule that a cause of action accrues when facts giving rise to it come into existence. *Berry v. Berry*, 646 S.W.3d 516, 524 (Tex. 2022). This rule, which "is only applied in exceptional cases," defers the accrual date until the claimant discovers, or reasonably should have discovered, the facts giving rise to the cause of action. *Id.* (internal quotations omitted).

The discovery rule only applies to a cause of action if (1) the injury incurred is inherently undiscoverable and (2) the evidence of the injury is objectively verifiable. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011). "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Berry*, 646 S.W.3d at 524. Whether an injury is inherently undiscoverable is determined categorically. *Archer v. Tregellas*, 566 S.W.3d 281, 290 (Tex. 2018). Thus, the analysis focuses on the class of injury and whether someone is likely to discover, through reasonable diligence, the type of injury sustained within the limitations period—not whether a specific plaintiff is likely to discover, through reasonable diligence, its particular injury. *Id.*; *see Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 735 (Tex. 2001).

A defendant who moves for summary judgment based on the statute of limitations bears the burden of proving when the cause of action accrued. *Erikson v.*

10

*Renda*, 590 S.W.3d 557, 563 (Tex. 2019). The plaintiff may plead the discovery rule in response to a limitations defense, *see Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018), but the defendant need not negate the discovery rule to prove when the cause of action accrued unless the plaintiff pleads it, *Erikson*, 590 S.W.3d at 563; *In re Est. of Matejek*, 960 S.W.2d 650, 651 (Tex. 1997). If the plaintiff pleads the discovery rule, the defendant may disprove it by proving that (1) it does not apply or (2) it applies but summary judgment evidence demonstrates that the plaintiff discovered, or reasonably should have discovered, its injury within the limitations period. *Schlumberger*, 544 S.W.3d at 834.

### 3. Quinn's Claims Against the SF Appellees Are Barred by Limitations

Although Quinn's petition is prolix and difficult to decipher, the SF Appellees have grouped her claims into four broad, subject-matter-based categories that provide a useful framework for our analysis: (i) Quinn's acquisition of the insurance policy on the Property in Spring 2016; (ii) Quinn's dissatisfaction with the handling of, and June 2017 payment on, her fire damage claim; (iii) certain acts that allegedly occurred between April and August 2017 pertaining to the subrogation process; and (iv) reports allegedly made to a national insurance database in December 2017.

Based on these four broad categories of conduct, Quinn asserted claims against the SF Appellees for (1) breach of contract; (2) violations of the DTPA and Chapter

541 of the Texas Insurance Code; (3) fraud; and (4) defamation.[6] Because Quinn

argues that the trial court erred by granting the SF Appellees summary judgments on

limitations grounds, we begin our analysis with an examination of the statutes of

limitations applicable to each of Quinn's claims.

### a. We set forth the statutes of limitations applicable to Quinn's claims against the SF Appellees.

Ordinarily, the limitations period for a breach-of-contract claim is four years.

*See Cosgrove v. Cade*, 468 S.W.3d 32, 35 (Tex. 2015); *see also* Tex. Civ. Prac. & Rem.

Code Ann. § 16.051 (prescribing a residual limitations period of four years).

However, an insurance contract may provide for a shorter limitations period, and

---

[6]Although Quinn did not label any of her causes of action as a "defamation claim," her claim that the SF Appellees made "fraudulent statements" to "national insurance databases falsely alleging [Quinn] to be responsible for damages to [Quinn's] vehicles" sounds in defamation, not fraud. To prove a fraud claim, a plaintiff must show, among other things, that the speaker made a false representation with the intent that the plaintiff would rely upon it and that the plaintiff did, in fact, act in reliance on the representation. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (listing elements of fraud cause of action). However, Quinn did not plead that these so-called fraudulent statements were made with the intent that she rely upon them or that she in fact did so; indeed, she did not even plead that the statements were made to her. *See id.* Thus, to the extent it has any viability, Quinn's claim based on the SF Appellees' alleged statements about Quinn to "national insurance databases" is properly characterized as a defamation claim. *See Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) ("[W]e look to the substance of a motion to determine the relief sought, not merely to its title."); *Karagounis v. Bexar Cnty. Hosp. Dist.*, 70 S.W.3d 145, 147 (Tex. App.—San Antonio 2001, pet. denied) ("The true nature of a lawsuit depends on the facts alleged in the petition, the rights asserted and the relief sought, and not on the terms used to describe the cause of action." (quoting *Billings v. Concordia Heritage Ass'n*, 960 S.W.2d 688, 693 (Tex. App.—El Paso 1997, pet. denied))); *see also WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (listing elements of defamation).

such contractual limitations provisions are valid and enforceable as long as they do "not create a limitations period shorter than two years." *Sheppard v. Travelers Lloyds of Tex. Ins. Co.*, No. 14-08-00248-CV, 2009 WL 3294997, at *2 (Tex. App.—Houston [14th Dist.] Oct. 15, 2009, pet. denied) (mem. op.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.070). Because Quinn's policy contains a clause requiring any "suit or action" against State Farm Lloyds to be filed within "two years and one day after the cause of action accrues," the applicable limitations period for Quinn's breach-of-contract claim is two years. *See id.*

Like breach-of-contract claims, fraud claims are also typically subject to a four-year limitations period. Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4); *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 139 (Tex. 2019). Thus, the limitations period for Quinn's fraud claims against the SF Appellees other than State Farm Lloyds is four years. But because of the aforementioned limitations-shortening provision in Quinn's insurance policy, the limitations period for her fraud claim against State Farm Lloyds is two years. *See Stevens v. State Farm Fire & Cas. Co.*, 929 S.W.2d 665, 671 (Tex. App.—Texarkana 1996, writ denied) (applying two-year limitations period to fraud claim based on similar limitations-shortening provision); *see also Sheppard*, 2009 WL 3294997, at *2.

The limitations period for Quinn's DTPA and Insurance Code claims is two years. *See* Tex. Bus. & Com. Code Ann. § 17.565; Tex. Ins. Code Ann. § 541.162.

The limitations period applicable to Quinn's defamation claim is one year. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a).

### b. To forestall the running of limitations, a party must act diligently to effect service of process; Quinn was not diligent.

Filing a lawsuit does not stop the limitations period from running "unless the plaintiff exercises due diligence in the issuance and service of citation." *Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007). The date of service will relate back to the filing date only "if service is diligently effected after limitations has expired." *Id.*

In a summary judgment context, there are shifting burdens on the question of whether a plaintiff exercised due diligence in effecting service. A defendant meets its initial burden to establish a limitations defense by showing that service occurred after the limitations period expired. *Flanigan v. Nekkalapu*, 613 S.W.3d 361, 364 (Tex. App.—Fort Worth 2020, no pet.). With this showing in place, "the burden shifts to the plaintiff to explain the delay and to raise a fact question regarding diligence of service." *Id.* (citing *Butler v. Skegrud*, No. 02-14-00168-CV, 2015 WL 4148474, at *2 (Tex. App.—Fort Worth July 9, 2015, no pet.) (mem. op.)). This burden includes the need to explain every "lapse in effort or period of delay." *Id.* (citing *Proulx*, 235 S.W.3d at 216). Should the plaintiff raise a fact question on the issue of diligence, "the burden shifts back to the defendant to conclusively show why the explanation is insufficient." *Id.* at 365.

14

The standard to assess diligence is whether "the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Proulx*, 235 S.W.3d at 216. "Generally, the question of the plaintiff's diligence in effecting service is one of fact[] and is determined by examining the time it took to secure citation, service, or both, and the type of effort or lack of effort the plaintiff expended in procuring service." *Id.* But "the plaintiff's explanation of its service efforts may demonstrate a lack of due diligence as a matter of law, as when one or more lapses between service efforts are unexplained or patently unreasonable." *Id.*

Here, where applicable,[7] the SF Appellees raised the issue of Quinn's diligence in effecting service. The record shows gaps of more than two years between the dates

---

[7]As detailed above, Quinn named SFL Inc. as a defendant in her original petition in March 2019 and effected service in June 2019. But Quinn later effectively nonsuited SFL Inc. by filing her "corrected" first amended petition removing SFL Inc. as a defendant and adding State Farm Lloyds instead. *See Johnson v. Coca-Cola Co.*, 727 S.W.2d 756, 758 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (explaining that "[t]he filing of an amended petition omitting an individual or entity as a party has the effect of dismissing such party the same as if a formal dismissal order had been entered"). Quinn later re-added SFL Inc. as a defendant in her third amended petition, which was filed November 5, 2021, and effected service on November 29, 2021. Because SFL Inc. was technically served only twenty-four days after Quinn filed her third amended petition, SFL Inc. did not raise the issue of Quinn's diligence in effecting service in its answer or dispositive motions. However, because Quinn effectively dismissed SFL Inc. from the case, limitations on Quinn's claims against SFL Inc. are calculated to run through the date she re-added it to the lawsuit, not the initial filing date. *See Clary Corp. v. Smith*, 949 S.W.2d 452, 459 (Tex. App.—Fort Worth 1997, pet. denied) ("When a cause of action is dismissed and later refiled, limitations are calculated to run from the time the cause of action accrued until the date that the claim is refiled."); *Johnson*, 727 S.W.2d at 758 (affirming summary judgment on

15

that State Farm Lloyds and Goldsworthy were added as defendants and the dates that they were served; a gap of four months for Wey; and a gap of two months for Pedroso. Indeed, Quinn did not serve any defendants other than SFL Inc. until more than two years had passed since she initially filed suit and only began attempting to effect service on the other defendants after the trial court threatened to dismiss her lawsuit for want of prosecution. However, Quinn offered no explanation for these delays.

Given the unexplained, prolonged lapses in Quinn's service efforts, we conclude that she lacked due diligence as a matter of law. *See Proulx*, 235 S.W.3d at 216. Accordingly, the dates of service of the SF Appellees do not relate back to the filing date, and the dates of service, not the filing date, are the relevant dates for determining whether Quinn's claims against the SF Appellees are time-barred. *See id.* at 215–16.

### c. All of Quinn's claims against the SF Appellees that are subject to one- or two-year limitations periods are time-barred.

As set forth above, while the limitations period for Quinn's fraud claims against the SF Appellees other than State Farm Lloyds is four years, the remainder of her claims are subject to either a one-year or two-year limitations period. Regardless of what the actual accrual dates of Quinn's claims were, her claims must have accrued no

---

limitations grounds where previously dismissed defendant was re-added after limitations had run).

later than March 1, 2019—the date on which she filed suit.[8]  *See Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 344 n.3 (Tex. 1992).  Assuming a March 1, 2019 accrual date, the one-year limitations period would have expired on March 1, 2020, and the two-year limitations period would have expired on March 1, 2021.  However, as of March 1, 2021, Quinn had not served any of the SF Appellees—and had not even named Wey or Pedroso as a defendant.[9]

Because Quinn served the SF Appellees after the one-year and two-year limitations periods had expired and her service efforts lacked diligence as a matter of law, all of her claims that are subject to either a one- or two-year limitations period— that is, all of her claims except for her fraud claims against SFL Inc., Goldsworthy, Wey, and Pedroso—are time-barred.  Thus, the trial court did not err by granting the SF Appellees summary judgment on those claims.  *See Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 532 (Tex. 1997).

---

[8]Although, as detailed above, Quinn amended her petition numerous times, adding and removing parties in the process, she alleged the same essential insurance-related claims—fraud, breach of contract, violations of the DTPA and Chapter 541 of the Insurance Code, and defamation—in her original petition as she did in her third amended petition.

[9]As previously noted, while Quinn named SFL Inc. as a defendant in her original petition and effected service in June 2019, she later dismissed SFL Inc. from the lawsuit and did not re-add it as a defendant until she filed her third amended petition in November 2021.

### d. Quinn's remaining claims against the SF Appellees are also time-barred.

Quinn's fraud claims against SFL Inc., Goldsworthy, Wey, and Pedroso—her only claims subject to a four-year limitations period—are also time-barred. Quinn's fraud claim pertains to her acquisition of the insurance policy on the Property in Spring 2016.[10] Specifically, her petition alleges that in March 2016 she paid a premium for a "five-million-dollar State Farm Homeowners Insurance Policy" but that when she received her policy on April 5, 2016, she "noticed the amount of 'homeowners' coverage' was significantly less than" five million dollars and that the insurer was not "State Farm Mutual Automobile Insurance Company" (SF Auto) but rather State Farm Lloyds, "a company of significantly less asset value" than SF Auto. Quinn claims that the SF Appellees defrauded her by, among other things, misrepresenting the insurer that would be issuing the policy and the amount of coverage she would receive.

Thus, by Quinn's own admission, facts giving rise to her fraud causes of action came into existence on April 5, 2016. She alleges that as of that date, she had paid a premium for what she believed to be a five-million-dollar insurance policy from SF

---

[10]In her petition, Quinn makes a myriad of allegations concerning alleged statements made by certain of the SF Appellees after the February 2017 fire loss. It is unclear whether Quinn attempts to base any of her fraud claims on these post-loss statements, but regardless of Quinn's intentions, such statements generally do not give rise to fraud claims because an insured could not have relied on such statements to her detriment. *See, e.g.*, *Rodriguez v. Safeco Ins. Co. of Ind.*, No. 18-CV-00851, 2019 WL 650437, at *5 (W.D. Tex. Jan. 7, 2019) (citing *Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, No. H-10-2580, 2012 WL 201864, at *7–10 (S.D. Tex. Jan. 20, 2012)).

Auto but instead had received a policy issued by State Farm Lloyds that clearly reflected a lesser coverage amount. Accordingly, her fraud claims against the SF Appellees accrued as of April 5, 2016. *See Exxon Corp.*, 348 S.W.3d at 202; *Dunmore*, 400 S.W.3d at 640.

Quinn's arguments in favor of a later accrual date for her fraud claims are unavailing. First, Quinn, pointing to her allegation in her petition that she "was not aware of the [SF Appellees'] intentional frauds, misrepresentations, deceptions, and acts to conceal the material facts at the time of inducement . . . for many years thereafter," argues that she could neither have known that she had been defrauded nor incurred any damages until she made a claim under the policy and failed to receive the coverage benefits to which she believed she was entitled. However, as shown above, Quinn herself admitted that on April 5, 2016, she was aware that she had not received the insurance policy for which she believed she had paid. Thus, as of that date, she knew that she had not received what she believed to be the benefit of her bargain and, accordingly, all of the alleged facts necessary for Quinn to pursue her fraud claims existed. *See Exxon Corp.*, 348 S.W.3d at 202. Because the value of the policy Quinn had received was less than the value of the policy that she thought she had paid for, she had an immediate claim for damages; her assertion that damages did not accrue until she filed a claim under the policy is simply incorrect. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998) (op. on reh'g) (explaining that Texas recognizes two measures of damages for

19

common law fraud, including "the benefit-of-the-bargain measure," which "computes the difference between the value as represented and the value received").

Quinn also argues for a later accrual date based on the discovery rule. However, this argument fails for several reasons. First, Quinn did not properly invoke the discovery rule by pleading it as a matter of confession and avoidance and alleging in her petition that her injuries were inherently undiscoverable. *See L.C. v. A.D.*, 971 S.W.2d 512, 514 (Tex. App.—Dallas 1997, pet. denied) (op. on reh'g) ("The discovery rule is a plea in confession and avoidance; thus, the party seeking to avail itself of the discovery rule must plead it." (citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517–18 (Tex. 1988))). Second, even if Quinn had properly invoked the discovery rule, it is inapplicable to her fraud claims. As set forth above, the discovery rule only applies to a cause of action if, among other things, the injury incurred is inherently undiscoverable. *Shell Oil Co.*, 356 S.W.3d at 930. But the injury giving rise to Quinn's fraud claims was not inherently undiscoverable. Indeed, Quinn alleged that she did, in fact, discover it when she received her policy on April 5, 2016. Thus, the discovery rule does not apply.

Because Quinn's fraud claims against the SF Appellees accrued on April 5, 2016, the four-year limitations period for her claims against SFL Inc., Goldsworthy, Wey, and Pedroso expired on April 5, 2020. As of that date, Quinn had not served

20

with the requisite diligence any of the SF Appellees—or even named Pedroso or Wey as defendants.[11]  Thus, her fraud claims are time-barred.

### e. Summary judgment was proper.

Because the SF Appellees conclusively established that all of Quinn's claims against them were time-barred, the trial court properly granted them summary judgments on limitations grounds.  *See Velsicol Chem. Corp.*, 956 S.W.2d at 532. Accordingly, we overrule Quinn's first issue.

## B. Any Error Concerning the Trial Court's Dismissal with Prejudice of Quinn's Claims Against Harbert Was Both Unpreserved and Harmless

In her fifth issue,[12] Quinn asserts that the trial court erred by dismissing her claims against Harbert with prejudice.  However, Quinn did not present this issue to the trial court via a post-judgment motion and therefore has failed to preserve it for appeal.  *See Bird v. Kornman*, 152 S.W.3d 154, 161 (Tex. App.—Dallas 2004, pet. denied) ("[E]rror in dismissing a case with prejudice cannot be raised for the first time on appeal and must be presented to the trial court."); *see also* Tex. R. App. P. 33.1(a). Moreover, even if Quinn had preserved this issue, any error would be harmless.  *See Kutch v. Del Mar Coll.*, 831 S.W.2d 506, 513 n.5 (Tex. App.—Corpus Christi–Edinburg

---

[11]As noted above, Quinn had previously served and then nonsuited SFL Inc. but did not re-add SFL Inc. as a defendant until after limitations had expired.  *See supra* note 7.

[12]Because Quinn asserts the same claims against Harbert and the SF Appellees, we address her appellate issues out of order for ease of discussion.  *See, e.g., Hockins v. U.S. Certified Contractors, Inc.*, No. 02-17-00180-CV, 2018 WL 2248487, at *2 n.2 (Tex. App.—Fort Worth May 17, 2018, no pet.) (mem. op.).

1992, no writ) (recognizing that "[d]ismissal with prejudice is not necessarily harmful error"). Quinn's claims against Harbert are, in all material respects, identical to her claims against the SF Appellees and arise from the same facts. Thus, even if the dismissal had been without prejudice, Quinn would be unable to pursue her claims against Harbert because they would be time-barred.

We overrule Quinn's fifth issue.

## C. The Trial Court Did Not Err by Dismissing Quinn's Claims Against the Bakers and New Covenant

Quinn's second, third, and fourth issues concern the trial court's dismissal of her claims against the Bakers and New Covenant.[13] Specifically, Quinn argues that the trial court erred by granting both summary judgments and Rule 91a dismissals to the Bakers (as opposed to granting one form of relief or the other); dismissing Quinn's claims against New Covenant; and granting summary judgments to the Bakers. Because these issues are interrelated, we address them together. *See Vann v. Gaines*, No. 02-06-00148-CV, 2007 WL 865870, at *1 (Tex. App.—Fort Worth Mar. 22, 2007, no pet.) (mem. op.).

### 1. Rule 91a Dismissals: Applicable Law and Standard of Review

Rule 91a allows a party to move to dismiss a claim brought against it if the claim has "no basis in law or fact." Tex. R. Civ. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn

---

[13]On appeal, Quinn does not challenge the trial court's dismissal of her claims against the Harold D. & Madonna A. Baker Trust.

from them, do not entitle the claimant to the relief sought." *Id.* "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.* We review the merits of a Rule 91a ruling de novo. *In re Farmers Tex. Cnty. Mut. Ins.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding).

The Texas Supreme Court has specifically held that Rule 91a "permits motions to dismiss based on affirmative defenses" if they are "conclusively established by the facts in a plaintiff's petition." *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020) (citing Tex. R. Civ. P. 91a.1). Thus, a court may grant a Rule 91a motion to dismiss on limitations grounds. *See In re Springs Condos., L.L.C.*, No. 03-21-00493-CV, 2021 WL 5814292, at *3 (Tex. App.—Austin Dec. 8, 2021, orig. proceeding [mand. denied]) (mem. op.). When considering a Rule 91a motion, the trial court's factual inquiry is limited to "the pleading of the cause of action" and any pleading exhibits permitted by Rule 59, which are those attached to or copied into the plaintiff's pleadings.[14] Tex. R. Civ. P. 91a.6, 59; *see Bethel*, 595 S.W.3d at 656. But a trial court's legal inquiry is not as limited, and thus "[i]n deciding a Rule

[14]Quinn asserts that the trial court could not grant the Bakers' and New Covenant's Rule 91a motions on limitations grounds because determining when the claim accrued required considering the exhibits attached to her petition. However, this argument fails for a number of reasons. First, it does not appear that Quinn raised this issue in the trial court, and thus she has failed to preserve any claimed error. *See* Tex. R. App. P. 33.1(a). Second, as we will discuss in greater detail below, because Quinn's petition itself contains allegations concerning the date that she purchased the Property and the date that the fire occurred, the trial court was not required to consider the exhibits to establish the accrual dates for Quinn's claims. Third, Rule 91a expressly allows courts to consider the plaintiff's pleading exhibits in ruling on a motion to dismiss. Tex. R. Civ. P. 91a.6.

23

91a motion, a court may consider the defendant's pleadings if doing so is necessary to make the legal determination of whether an affirmative defense is properly before the court." *Bethel*, 595 S.W.3d at 656.

## 2. Quinn's Claims Against the Bakers and New Covenant Are Barred by Limitations

In their Rule 91a motions, the Bakers and New Covenant sought dismissal of Quinn's claims on the grounds that, among other things, they were barred by limitations. For the reasons set forth below, we conclude that the facts alleged in Quinn's petition conclusively established that her claims against the Bakers and New Covenant are time-barred and that, therefore, the trial court did not err by dismissing those claims under Rule 91a. *See Bethel*, 595 S.W.3d at 656; *Springs Condos., L.L.C.*, 2021 WL 5814292, at *3.

### a. We set forth the statutes of limitations applicable to Quinn's claims against the Bakers and New Covenant.

As noted above, Quinn's third amended petition is difficult to decipher. While the only titled cause of action against the Bakers and New Covenant is "defective construction," which is more accurately characterized as a claim for fraud, negligent misrepresentation, or negligence, *see Karagounis*, 70 S.W.3d at 147, Quinn also appears to assert a claim for breach of contract or breach of warranty against the Bakers and New Covenant.[15]

---

[15]Quinn's own briefing in this court highlights the difficulties in deciphering her petition. Quinn maintains that she "did not sue [the Bakers or New Covenant] for

24

As set forth above, fraud claims are subject to a four-year limitations period.[16] Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4); *Agar Corp., Inc.*, 580 S.W.3d at 139.

Breach-of-contract and breach-of-warranty claims are also subject to a four-year limitations period. *See Cosgrove*, 468 S.W.3d at 35 (breach of contract); *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 668 (Tex. 1999) (breach of warranty); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.051.

Negligence and negligent misrepresentation claims are each subject to a two-year limitations period. *See KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999) (negligence); *Weaver & Tidwell, L.L.P. v. Guarantee Co. of N. Am. USA*, 427 S.W.3d 559, 565 (Tex. App.—Dallas 2014, pets. denied) (negligent misrepresentation).

### b. Quinn's claims against the Bakers and New Covenant are time-barred.

As previously noted, a statute of limitations begins to run on the accrual date, *see JPMorgan Chase Bank, N.A.*, 508 S.W.3d at 414, which is the date when facts giving

---

breach of contract" while at the same time arguing that her petition did not "fail[] to state a 'recognized cause of action'" because the Bakers and New Covenant "were able to read into the pleading other claims, for DTPA violations, breach of contract, and fraud."

[16]In her briefing in the trial court, Quinn asserted that her "defective construction" claim was subject to a six-year limitations period, but she has not raised this argument on appeal and has thus forfeited the issue. *See Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991) (holding that because "grounds of error not asserted by points of error or argument in the court of appeals are waived," the court could not consider an argument that appellant had abandoned on appeal).

rise to the cause of action come into existence, even if those facts are not discovered, or the resulting injuries do not occur, until later, *see Exxon Corp.*, 348 S.W.3d at 202; *Dunmore*, 400 S.W.3d at 640.

Quinn's claims against the Bakers and New Covenant are based on their alleged "defective construction" of the outdoor fireplace on the Property and their alleged misrepresentations about the quality of this construction, all of which occurred prior to Quinn's purchase of the Property in March 2016. Thus, while Quinn's claims may have accrued earlier,[17] there is no doubt that they accrued, at the latest, on the date of the fire—that is, February 17, 2017.[18] *See In re Jorden*, 249 S.W.3d 416, 422 (Tex. 2008) (orig. proceeding) ("[A] cause of action accrues for limitations purposes when a claimant learns of an injury, even if the rest of the essential facts are unknown."). Indeed, Quinn acknowledged in her response to the Bakers' and New Covenant's

---

[17]As the Bakers and New Covenant pointed out in their briefing in support of their motions to dismiss, the alleged construction defects—and thus the Bakers' alleged misrepresentations about the quality of the construction—could have, and likely should have, been discovered prior to Quinn's purchase of the property as part of an inspection by a qualified housing inspector.

[18]In her original petition, Quinn explicitly stated that "the first discovery of Defendants['] unlawful activities occurred on February 17[], 2017[,] when [the Property] was completely destroyed due to a total loss fire. The source of the fire was determined to be an act of negligence on behalf of [the Baker Defendants]." Thus, even if we were to assume without deciding that the discovery rule applied to Quinn's claims against the Bakers and New Covenant, Quinn has conceded that she had discovered the Bakers' and New Covenant's alleged "unlawful activities" by February 17, 2017.

Rule 91a motions to dismiss that February 17, 2017, "is likely . . . the proper 'discovery of flaw date.'"

Because Quinn's claims accrued no later than February 17, 2017, the two-year statute of limitations on her negligence and negligent misrepresentation claims expired no later than February 17, 2019, and the four-year limitations period on her fraud, breach-of-contract, and breach-of-warranty claims expired no later than February 17, 2021.

While Quinn initially sued the Bakers and New Covenant on March 1, 2019, she later effectively dismissed them from the lawsuit by failing to name them as defendants in her second amended petition filed in July 2021. *See Johnson*, 727 S.W.2d at 758. Thus, the Bakers and New Covenant were no longer parties to the lawsuit after Quinn filed her second amended petition. *See id.* Because both the two-year and four-year limitations periods had expired before Quinn attempted to re-add the Bakers and New Covenant as defendants in November 2021, all of her claims against them are time-barred. *See id.*; *see also Clary Corp.*, 949 S.W.2d at 459.

### c. Dismissal under Rule 91a was appropriate.

The Bakers' and New Covenant's limitations defense was apparent from the pleadings and "amply supported" their motions to dismiss under Rule 91a. *See Johnson*, 727 S.W.2d at 758; *see also* Tex. R. Civ. P. 91a.6; *Bethel*, 595 S.W.3d at 656. Quinn's petition sets forth the alleged dates of the Bakers' renovations to the Property, her purchase of the Property, and the occurrence of the fire. Thus, the facts

in Quinn's petition conclusively established that her claims against the Bakers and New Covenant were time-barred, and accordingly, limitations constituted appropriate grounds for dismissal under Rule 91a. *See Bethel*, 595 S.W.3d at 656; *Springs Condos., L.L.C.*, 2021 WL 5814292, at *3.

### 3. We Discern No Reversible Error Regarding the Trial Court's Dismissal of Quinn's Claims Against the Bakers and New Covenant

In her third issue, Quinn asserts that the trial court erred by dismissing her claims against New Covenant pursuant to Rule 91a. Having determined that limitations provided an appropriate basis for the dismissal of Quinn's claims against New Covenant, we overrule Quinn's third issue.

In her second and fourth issues, Quinn argues that the trial court erred by granting the Bakers summary judgments. Specifically, she contends that the trial court committed procedural error by granting the Bakers both take-nothing summary judgments and Rule 91a dismissals because these forms of relief are mutually exclusive and committed substantive error by granting the Bakers' summary judgment motions even though—in Quinn's view—the Bakers had not proven that they were entitled to judgment as a matter of law. However, having determined that the trial court did not err by dismissing Quinn's claims against the Bakers on limitations grounds pursuant to Rule 91a, we conclude that any error in the trial court's granting of summary judgments to the Bakers is harmless. *See Diamond v. Eighth Ave. 92, L.C.*, 105 S.W.3d 691, 697 (Tex. App.—Fort Worth 2003, no pet.) (concluding that because

28

the trial court had properly granted summary judgment for appellee on limitations grounds, any error concerning the court's granting appellee's separately filed motion to dismiss was harmless). Accordingly, we overrule Quinn's second and fourth issues.

### III. Conclusion

Having overruled all of Quinn's issues, we affirm the trial court's judgments.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: June 1, 2023